[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
KAREN E. SOUZA, ESQ., Representing the Plaintiff.
CHARLES REED, ESQ., Representing the Defendant.
THE COURT: Gray versus Saint Raphael's Hospital I see there's a motion to continue the case —
MS. SOUZA: Right, Your Honor. We've checked with Judge Licari on that matter and he has informed us it has not been ruled on as of yet.
MR. REED: Your Honor, I believe that, that was filed on Thursday afternoon — So, it's probably yet to be —
MS. SOUZA: Right.
THE COURT: Okay. This is the defendant's motion to preclude?
MR. REED: That's right Your Honor. CT Page 6998
MS. SOUZA: This is the defendant's motion.
THE COURT: All right. Have you each identified yourselves for the record?
MR. REED: I'm sorry, Charles Reed for the defendant.
THE MONITOR: Charles, who?
MR. REED: Reed, R-e-e-d.
MS. SOUZA: And Karen Souza for the plaintiff.
THE COURT: Okay, Mr. Reed.
MR. REED: Your Honor, this is a medical malpractice case that was filed in January of 1988 that involves allegations of negligence against the Hospital of Saint Raphael's pertaining to events during the labor and delivery of the minor plaintiff's in January of 1986. It's a case that was claimed to the trial list on December 1st, 1989. And my motion is the motion to preclude the testimony of the plaintiff's first and only expert witness' who was disclosed on June 30th this year. The plaintiff never moved for an extension of time to enlarge the time frame for disclosure under the practice book. This case has — There has been no discovery conducted in this case by the plaintiff. It's been pretried twice. On both occasions it's clear that the plaintiff had not done anything to prepare the case. And it is a case therefore that we believe is suitable for the sanction of — conclusion of his testimony, since there's been such overwhelming failure on the part of the plaintiff to comply with the provisions of Section 220 of The Practice Book.
It is really a case in which if this expert is allowed to testify the rule regarding the time limit for disclosure will have no meaning at all in our view.
The case has been around for five years. There has been no attempt whatsoever to move this case along on the part of the plaintiff. This disclosure has come three in a half years after the time within which to CT Page 6999 do so has past. Again, without and extension granted by the Court or with any agreement with defense counsel. And we now are on the verge of a trial date which we selected in January of this year for this week. It may or may not go forward. Or the indication is a little uncertain from the case flow office. But, even if we don't go forward this week given the circumstances of this extremely belated disclosure we feel that it's appropriate for the Court to order preclusion of this newly disclosed expert's testimony.
The plaintiff in her opposition has noted a couple of reasons why she believes that there is good cause to explain or justify the belated disclosure. She contends that there was some difficulty in obtaining medical records. The minor plaintiff in this case was hospitalized extensively. And there were medical records of some twenty volumes at Yale-New Haven Hospital. My firm obtained medical record authorizations from the plaintiffs in 1990. Pursuant to which we received all of the medical records and used them for our purposes in obtaining consultants to review the case. So, I don't believe that it's properly the matter of not being able to get medical records. And then there are some concern over the resident status of the plaintiff, who in 1990 moved to Georgia without apparently leading a forwarding address. By the testimony of the minor plaintiff Rochelle Gray, which was taken by the plaintiff's two or three weeks ago. Mrs. Gray moved to Georgia well after the time to disclose an expert had past and after two in a half years of the case being filed and during which presumably there was ample time for the necessary preparation of discovery to be conducted. So, given the extremely egregious failure of the plaintiff to comply with the Practice Book in this case we feel in preclusion is an appropriate sanction and that the case ought to proceed in that fashion.
THE COURT: Attorney Souza?
MS. SOUZA: Yes, Your Honor. Before I get into the merits of whether the Motion to Preclude should be granted or not. I think at this time it would not be appropriate for the Court to rule on such a Motion to Preclude. And my reason is as such. We have filed a motion for CT Page 7000 continuance in this case and to kind of make it simplified, this case involved a fourteen year old minor who had two babies, two twins. The minor — One of the twins died. One of the twins required extensive hospitalization as Attorney Reed has indicated. At that time the grandmother, the mother of the fourteen old who has the baby was named executrix or administrator of the twin that died. And was also put in on legal papers as suit — Although not named in Probate Court as the best friend and next of kin and suit was brought through Cynthia Gray on behalf of the minor Rochelle Gray, who was the mother and also on behalf of the living twin. What has recently come to our attention which our client did not make us aware of and which in fact we still need to verify, is that, apparently back in 1989 her parental rights were terminated. Rochelle Gray's parental rights were terminated as to the living twin. And therefore there's some concern as to who actually has the right to either continue the suit or go forward with it. We've talked to the Probate Court on this and the Probate has indicated that they need to have a hearing to appoint the appropriate guardian or administrator for this estate since in fact if there is any money gone from the personal injury suit there has to — The twins rights have to be protected. And because the parental rights have been terminated they do not feel that Rochelle Gray or Cynthia Gray are the appropriate people to represent her. And therefore a hearing is forthcoming. And they attached that — the letter from the Probate Judge along with my motion for continuance. I —
THE COURT: Lets assume you get your continuance?
MS. SOUZA: If we get a continuance Your Honor?
If we get our continuance — Although I'm not saying that, that's going to guarantee or even give us much more influences as far as having the motion to preclude, either if granted or not granted I think that it will have some influence on the Court. There's been cases and I can cite, Poe(phonetic) versus Bell in which in that case an expert was disclosed right before trial and a trial Court in that case did preclude the expert. But, it says, "We also note however that the ruling would not be in any force at a new trial because the element of CT Page 7001 surprises vanished and circumstances made for the plaintiff ample opportunity to prepare property for the witnesses expected testimony". I think obviously the whole idea of Sturdivant and it's prodigy is to prevent a cat and mouse game. And that is understood and can see why it is a good rule for the Courts to follow. I think there are exceptions and I think in this case with the time limit being as it may I think, if in fact there's a continuance granted there obviously will be much more time for the defendant to have this discovery and the Court may have a different approach as to whether or not the experts should in fact be precluded.
THE COURT: Is this the only expert that the plaintiff has?
MS. SOUZA: This is the only expert Your Honor that the plaintiff has.
THE COURT: And why has the case languished since 1988 with no expert?
MS. SOUZA: Well the reasons are this Your Honor. When the case was originally brought obviously we were in contact with the plaintiff and — But, not much contact with the minor the fourteen year old. We went back and forth. And there are twenty-seven volumes of medical's at Yale-New Haven Hospital. We would get all the medical's ready to send them over and realize that a portion of them was missing. We did not fully get all of the medical's from Yale-New Haven Hospital the twenty-seven volumes until last year. At that point we did tried to get an expert before then or even have someone review them and because they were missing medical's we were ever be able to get the case properly reviewed. The point when we did finally get all the medical's we contacted the plaintiff Cynthia Gray just to review it with her and let her know where we were going and what the problems had been. And in fact she had moved and we were not even able to talk to her as far as what the status with her or what the other baby was. And there was a lot of problems with communication as that — And As it may be.
We obviously could not give anything to the expert CT Page 7002 until we had all the information and all the medical's. And although I admit that there's a long time passed. This is not a case where we consulted an expert and didn't disclose it late. Frankly we just didn't have all the information both from our client after we got all the medical's and did not get all the medical's until a late date. And that is the reason for such a late discovery Your Honor.
MR. REED: Your Honor, the cat and mouse game in this scenario unfortunately are the proper reasons for this delay. Nothing has happened in this case that would have prevented the plaintiff's from preparing their case. Rochelle Gray who is the minor plaintiff who gave her to the twins — One whom ultimately died and the other of whom was hospitalized, lived with her mother for a year in a half according to our testimony that was taken a couple of weeks ago between 1989 and 1990 when her mother moved to Georgia. This was a case — This was a time after the case had been claimed to the trial list and they were living together. The grandmother properly prosecuting the case for her minor daughter and her minor granddaughter. They were living in Waterbury. We obtained medical records in 1990 that indicated that the surveying twin was in foster care living in the New Britain area in a — family by the name of Orsi(phonetic) and was being cared for at the UConn Medical Center by a private pediatrician in New Britain. So — And that is information that our office received pursuant to medical record authorizations from the plaintiff's counsel in 1990. So, at that time and in addition we received all of the medical records at Yale-New Haven Hospital. And at some very considerable expense had been copied and we had them for our own purposes to have them reviewed by our consultants. And I cannot understand why if there was any difficulty on part of the plaintiff in getting records together and consulting with the clients that wasn't ever set forth once in a motion for extension of time to name expert witnesses. So, I find it very difficult to believe that when we were able to do what was necessary in 1990 to prepare our case and have a consultant look at it, that the same opportunity was not also available to the plaintiff's. So, the cat and mouse game in this case was that for five in a half years we've had this case and now there's a proffer that CT Page 7003 it was only very recently that everything was together for the plaintiff's to get an expert. And in January of this year we met, Karen and I did and selected a trial date of August 2nd at which time Karen did not indicate that she had an expert and expressed some concern about whether an expert actually would be available at trial. And it was only three or four weeks before the trial date of this week when the case was pretried, that the very day of the pretrial before Judge Licari an expert witness disclosure was filed. And it is really a case of overwhelming neglect that provisions of Section 220 of the Practice Book that is involved here. And I think —
THE COURT: What I'm going to do is I'm going to hold the decision on the motion for the moment. When is the motion for continuance going to be acted on?
MS. SOUZA: A Your Honor I don't know how Judge Licari acts on it. I think the way we'll know whether it's acted on is that we won't get called in this week. I don't think he gives formal notice of whether or not he grants a continuance or not. I think what he does is he's holding it and I think if a Judge becomes available and at that point he needs to make a decision he makes a decision —
THE COURT: I will check with him. But, let me say this. I think that the Practice Book and Section 220 has to mean something. It has to mean something. And the fact that I was going to hold this until I see what Judge Licari does should not in anyway be any indication to either of you, that should the matter not be reached and given another trial day, that, that means that this Motion of Preclude is going to be denied. That's not what it means. Because I frankly think there's a good likelihood that this motion will be granted. And Attorney Souza I understand what you're saying but the defense had these records three years ago. And if your client or your client's guardian did not keep in touch with your office so that you could prepare the case. I mean that's her fault or someone's fault other then the defendant's here. I think this whole thing is why we now have the good faith certificate requirement, that before a malpractice case is instituted that at least there is an opinion available that there CT Page 7004 is a breach of the standard of care to avoid this very situation where a lawsuit is instituted, a malpractice case accusing someone of negligence in their professional capacity. And then the case languishes for years and years why you try to get somebody to back up your claim. I think that's not what these cases are all about. I'm going to hold it. I'm going to review the materials that you've submitted. I will check with Judge Licari and see what's going to happen. But, again I am not suggesting that should the case not get reached that this means I'm going to deny this motion. Because I think that the motion — That there's a likelihood that it will be granted onto either circumstance. And certainly if the case is exposed for trial then I think that under those circumstances it has to be granted because it's just — Because now you're getting into — Once you now produce an expert on the eve of trial you're getting into depositions. You're opening everything up all over again with depositions and so forth and so on. And that's not what it's all about. Okay?
MR. SOUZA: I understand Your Honor.
THE COURT: All right.
MR. REED: Your Honor, in the event that we're not reached shall we make contact with the Clerk's Office to reclaim the matter for Your Honor?
THE COURT: No, no absolutely not. I got it. I got the papers. I may check with Judge Licari and find out what's going to happen. And perhaps Judge Licari will act on this once I bring it to his attention that it does play the part in this matter. Or I may just have to wait until the week is out. But, this does not have to be re-argued. I will take it from here.
MS. SOUZA: Thank you Your Honor.
MR. REED: Thank you Your Honor.
HONORABLE BRUCE THOMPSON, JUDGE CT Page 7005